IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRENDA ELAINE MITCHELL,
     Plaintiff,

vs.                              Case No.:  3:15cv529/MCR/EMT

FIRST TRANSIT, INC.
d/b/a ESCAMBIA COUNTY AREA TRANSIT,
     Defendant.[1]
_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff Brenda Elaine Mitchell ("Mitchell"), proceeding pro se, brings this

employment discrimination action pursuant to Title VII of the Civil Rights Act of

1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Age

Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621–634

("ADEA") (*see* ECF No. 7 at 4).[2] Presently before the court is Defendant First Transit,

Inc.'s ("First Transit") motion to partially dismiss Mitchell's Amended Complaint

---

[1] Although Plaintiff named two Defendants, Escambia County Area Transit and First Transit, Inc., Defendant First Transit, Inc. filed a corporate disclosure statement stating that it operates using the trade name Escambia County Area Transit (*see* ECF No. 28).  First Transit states that Escambia County Area Transit is not a separate corporate entity, but rather a trade name currently used by First Transit (*id.*).  Therefore, the court will direct the clerk of court to modify the docket to reflect that the sole Defendant in this case is First Transit, Inc. d/b/a Escambia County Area Transit, as the court has already done in the style of this Order and Report and Recommendation.

[2] The document and page references used in this Report reflect the document and page numbers assigned by the court's electronic docketing system rather than those the parties may have assigned.

(ECF No. 23).  Mitchell responded in opposition to the motion to dismiss (ECF No. 27).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  After careful consideration of the issues raised by the parties, it is the opinion of the undersigned that First Transit's motion for partial dismissal should be granted.

I.    BACKGROUND

Mitchell commenced this case on November 23, 2015, by filing a Complaint (ECF No. 1).  Mitchell alleged she was terminated from employment on October 11, 2013, based upon her race and gender, and in retaliation for exercising her First Amendment rights (*id.* at 3–5).  Mitchell also alleged she was not promoted due to her race (*id.*).  Mitchell brought claims under Title VII, the "Discrimination Disabilitie [sic] Act," and the First Amendment (*id.* at 6).  She requested compensatory damages in the amount of $2,800,000.00 (*id.*).

Mitchell did not file her employment discrimination complaint on the court-approved form for use in such cases; therefore, the court directed her to do so (*see* ECF No. 6).  Mitchell complied, and filed an Amended Complaint on January 21,

2016 (ECF No. 7).  In the Amended Complaint, Mitchell claims that First Transit discriminated against her by failing to promote her and terminating her employment because of her gender, race, color, age, and "non-union" status (*id.* at 3).  Mitchell alleges the following facts in support of her claims.

Mitchell, a black female, began her employment with ECAT on September 15, 1986 (*see* ECF No. 7 at 3; ECF No. 27 at 1).  She was working as an Operations manager when First Transit began managing ECAT on April 1, 2012 (*see* ECF No. 7 at 7; ECF No. 27 at 1).  Mitchell was terminated from employment on October 11, 2013, when she was 55 years old (ECF No. 7 at 4–5).

When First Transit began managing ECAT, the Escambia County Board of County Commissioners instructed First Transit to "work with" the Amalgamated Transit Union Local 1395 ("Union") (ECF No. 7 at 7).  Mitchell was not a member of the Union (*id.* at 6–7).  Mitchell alleges Union officials gave General Manager Mary Lou Franzoni a list of supervisors who they wanted terminated from employment, and Mitchell's name was on the list (*id.* at 7).

On April 23, 2012, First Transit posted a job opening for an Assistant General Manager-Operations position (ECF No. 7 at 4).  Mitchell applied for the position (*id.*).  Mitchell had worked very closely with the Directors of Transportation and Assistant

General Manager-Operations when ECAT was managed by a different management company, and was thus experienced and knowledgeable about the position (*see* ECF No. 7 at 4; ECF No. 1 at 5). Dianne Hall, a white female with experience in school bus transportation but less experience than Mitchell in public transportation, was hired for the Assistant General Manager-Operations position (*id.*). In June of 2012, General Manager Franzoni asked Mitchell to take the position of Lead Dispatch Supervisor, where she would be assisting Dianne Hall (ECF No. 7 at 4). Mitchell was told she would be provided a job description and a pay raise at a later time (*id.*).

In May of 2013, First Transit removed General Manager Franzoni and replaced her with Harold Humphry, allegedly upon pressure by the Union (ECF No. 7 at 6). Mitchell alleges the Union had opposed certain actions taken by Ms. Franzoni during her tenure as General Manager, but the Union did not oppose the same actions when Mr. Humphry implemented them during his tenure (*id.* at 6–7).

On July 8, 2013, Dianne Hall presented Mitchell with a Personal Improvement Plan ("PIP") (Mitchell also refers to this as a Performance Improvement Plan) (ECF No. 7 at 5; ECF No. 23, Exhibit A). Mitchell refused to sign the PIP because she still had not been provided a job description, and she again requested that Hall provide her a job description (ECF No. 7 at 5). Ms. Hall provided Mitchell with the job

description the next day, on July 9, 2013 (*id.*).  At that time, "out of fear," Mitchell presented Hall with "a letter concerning the PIP" (*id.*).  Mitchell also signed the PIP (*id.*).  Mitchell alleges "the retaliation and harassment began at that time" (*id.*).  Dianne Hall informed Mitchell that Mitchell's desk would be moved into the dispatch office (*id.*).  The next day, on July 10, 2013, Mitchell's desk was moved into the dispatch office (*id.*).  Mitchell alleges the dispatch office is the center of activity in ECAT, and there are constant interruptions which make it difficult to concentrate and focus (*id.*).  The same day that her desk was moved, Mitchell became ill and left work (*id.*).  Mitchell returned to work eight days later, on July 18, 2013 (*id.*).  Some of her personal items were missing and her schedule had been changed (*id.*).  When Mitchell again returned to work on August 5, 2013, someone else was using her computer, and her password had been changed (*id.*).

On October 9, 2013, Mitchell went to Dianne Hall's office "to get answers from her and to clear up an error she [Hall] and Greg Thomas made" (ECF No. 1 at 5; *see also* ECF No. 7 at 5).  One of the issues Mitchell discussed with Hall was the fact that Hall and Greg Thomas (another employee) had authorized overtime pay for a driver, Gerri Bell (ECF No. 1 at 5).  Mitchell told Hall that monitoring overtime was one of the items in Mitchell's PIP, and "we was [sic] to monitor overtime not give it away"

(*id.*).  Mitchell alleges Hall became upset and stated, "Yeah, Greg told me you and Ken Edgerton was [sic] talking about me" (*id.*).  Mitchell responded that she and Ken Edgerton were not talking about her (*id.*).  Hall stated they would discuss it when Greg came into the office (*id.*).  Mitchell agreed, but suggested that Ken Edgerton attend as well (*id.*).  Hall replied in an angry tone, "You are getting upset." (*id.*).  Mitchell told Hall that she (Hall) sounded upset (*id.*).  Hall became more upset and told Mitchell to leave her office (*id.*).  Mitchell walked out, and as she walked down the hall she said to herself, "This woman is crazy." (*id.*).  Mitchell went to the dispatch office, and shortly thereafter, Hall told Mitchell to collect her belongings and leave (*id.*).  Mitchell received written notification that Hall terminated her employment because she demonstrated unwillingness to follow direction (ECF No. 7 at 5).  Hall initially identified the date of the incident as Tuesday, October 8, 2013, but then changed the date to October 9, 2013 (*id.*).  Mitchell states she attempted to ask Hall questions during her termination meeting on October 11, 2013, but Hall refused to permit her to ask questions (*id.*).

Mitchell alleges after she was terminated, First Transit hired a white male for the position of Scheduler, and  promoted a black, female union member, Gerri Bell, to Supervisor (ECF No. 7 at 6).  Mitchell alleges other employees received

progressive discipline instead of termination (*id.* at 6–7). For example, in June of 2011, Gerri Bell was "written up" and suspended for telling Mitchell, who was then an Operations Manager, to "burn in hell" (*id.*). Gerri Bell was given a "Last Chance Agreement" (*id.*). Then in July of 2012, Bell had an altercation with another employee (*id.*). Both employees were terminated, but returned to work with a "Last Chance Agreement" (*id.*). Mitchell alleges in December of 2012, a white male supervisor, Ron Chetwynde, made "violent comments" to General Manager Franzoni (*id.*). Mitchell alleges Chetwynde was "written up" and given a "Last Chance Agreement" (*id.*).

Mitchell also alleges after her termination, the Union signed a contract with ECAT, which it had refused to do for several months prior (ECF No. 7 at 6). The contract included a provision for a pay increase retroactive to October 3, 2013, eight days prior to Mitchell's termination (*id.*). Mitchell did not receive retroactive pay (*id.*).

Mitchell asserts claims under Title VII and the ADEA (ECF No. 7 at 4). She claims First Transit discriminated against her by failing to promote her to Assistant General Manager-Operations in June of 2012, and terminating her employment in October of 2013 (*id.* at 3). Mitchell claims she was discriminated against based upon

her gender ("Female"), race ("Black"), age (date of birth "11/03/1958"), color (not identified), and other ("Non-Union") (*id.* at 3, 6). As relief, Mitchell seeks to be re-employed and promoted (*id.* at 8). She also seeks monetary damages in the amount of $2,800,000.00 (*id.*).

First Transit filed a motion to dismiss Mitchell's claims for discrimination based upon color, age, and non-union status (ECF No. 23 at 4–6). First Transit also seeks dismissal of Mitchell's failure to promote claim (*id.* at 6–8). First Transit argues Mitchell failed to exhaust administrative remedies with respect to these claims, because Mitchell failed to assert them in her Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") (*id.*).

Mitchell opposes the motion to dismiss (ECF No. 27). She states she provided only a brief statement of facts in the Charge of Discrimination filed with the EEOC, because she believed she would have a chance to "explain and prove my case" at a later time (*id.*). Mitchell asserts she "made a written statement to be added to the original statement," but she did not amend the Charge of Discrimination to include those allegations because she did not know that the Charge of Discrimination could be amended (*id.*).

## II.   LEGAL STANDARDS

Before filing suit in federal court under Title VII or the ADEA, a plaintiff must first exhaust administrative remedies by filing a charge of discrimination with the EEOC. *See* Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA). The purpose of the exhaustion requirement is to give the EEOC the first opportunity to investigate the alleged discriminatory practices and attempt to obtain voluntary compliance and promote conciliation efforts. *See* Gregory, 355 F.3d at 1279. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is an appropriate procedural mechanism through which a court may dismiss a Title VII or ADEA claim when it is apparent from the complaint that the plaintiff failed to exhaust administrative remedies. *See, e.g.*, Pijnenburg v. W. Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001) (affirming district court dismissal of Title VII claim for failure to timely file EEOC charge). In applying Rule 12 (b)(6), the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).

## III. ANALYSIS

### A. Claims of discrimination based upon age, non-union status, and color (independent of race)

As previously noted, Mitchell indicated in her Amended Complaint that she was claiming discrimination based upon her gender ("Female"), race ("Flack"), age (date of birth "11/03/1958"), color (not identified), and other ("Non-Union") (ECF No. 7 at 3). First Transit seeks dismissal of Mitchell's claims of discrimination on the basis of color (independent of race), age, and "non-union" status, on the ground that Mitchell did not assert those claims in her Charge of Discrimination filed with the EEOC (ECF No. 23 at 4–6).

"A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citation omitted). However, "the scope of the EEOC complaint should not be strictly interpreted." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970).[3] "[T]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Id. "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [ ] allegations of new acts of discrimination are inappropriate."

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

Gregory, 355 F.3d at 1279–80 (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th

Cir. 1989)).

The parties do not dispute that Mitchell's Charge of Discrimination included

the following allegations:

> I was hired on September 15, 1986 by the Respondent as a Special
> Transit Operator. In June 2012, I was promoted to the position of Lead
> Dispatch Supervisor. On October 11, 2013, Diane Hall (White, Assistant
> General Manager, Operations) terminated my employment. I believe I
> was discriminated against because of my race (Black) and sex.
>
> On July 8, 2013, Hall gave me a copy of my job description and
> placed me on a Performance Improvement Plan. Although I had no
> previous write-ups I was terminated. Hall later replaced me with a White
> male. Ronald Chetwynde (White, Operations Supervisor) was placed on
> a last chance agreement for making a threat and was not terminated.
>
> I believe I have been discriminated against in violation of Title VII
> of the Civil Rights Act of 1964, as amended.

(*see* ECF No. 1, attached Charge of Discrimination). The Charge alleged that the

discrimination occurred from July 8, 2013 to October 11, 2013 (*id.*).

The Charge of Discrimination form required Mitchell to the check appropriate

box(es) to indicate the type of discrimination she suffered (*see* ECF No. 1, attached

Charge of Discrimination; ECF No. 23, Exhibit A). The copy of the Charge of

Discrimination submitted by Mitchell to this court shows that the boxes for "Race"

and "Sex" are checked with a computer-generated "**X**", and the boxes for

"Retaliation" and "Other (*Specify*)" are checked with a handwritten "✓" (*see* ECF No. 1, attached Charge of Discrimination).

First Transit states that the copy of the Charge of Discrimination enclosed with the Notice of Charge of Discrimination that it received from the EEOC shows that only the boxes for "Race" and "Sex" are checked (with a computer-generated "**X**") (*see* ECF No. 23, Exhibit A). The handwritten check marks do not appear on the copy received by First Transit (*see id.*).

In <u>Gregory</u>, *supra*, the defendant sought to dismiss the plaintiff's retaliation claim on the ground that the claim was "administratively barred because [the plaintiff] had not alleged in her EEOC discrimination charge that she had been retaliated against." 355 F.3d at 1278. The plaintiff alleged in her EEOC charge that she was discriminated against because of her race and sex. *Id.* at 1278–79. The plaintiff failed to mark "retaliation" on the EEOC template form. *Id.* at 1280.

The Eleventh Circuit held that Gregory's retaliation claim was not administratively barred by her failure to mark the "retaliation" space on the EEOC form. The court explained:

> The facts alleged in [Gregory's] EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable EEOC

investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation.

355 F.3d at 1280.

In Chanda v. Engelhard/ICC, the plaintiff alleged in the EEOC charge that he was discriminated against based upon disability and "retaliation" because "I complained about discrimination." 234 F.3d 1219, 1224 (11th Cir. 2000). The Eleventh Circuit held that the plaintiff could not bring a claim of retaliation due to national origin in district court, because the EEOC charge did not make any reference to discrimination based upon national origin. *Id.* at 1225.

In Sanchez, *supra*, the Eleventh Circuit permitted a suit based upon national origin when the plaintiff only checked the box indicating discrimination based upon "sex" on her EEOC charge. 431 F.2d at 461. The plaintiff in that case, however, had sought to amend the administrative charge to add a claim of national origin after the time for filing a charge had expired.

In this case, Mitchell's Charge of Discrimination did not include allegations from which a reasonable EEOC investigator could have concluded that Mitchell was

complaining about discrimination based upon her age, non-union status, or color (independent of her race). Mitchell's Charge of Discrimination did not mention her age or color (independent of her race), or the fact that she was not a member of the Union; nor did Mitchell mention the age, color (independent of race), or union status of the person who replaced her. Mitchell alleged only that her replacement was a white male. Further, the allegations in Mitchell's Amended Complaint concerning her age and non-union status are not reasonably related to the allegations of race and sex discrimination asserted in her Charge of Discrimination; and Mitchell does not mention her color independent of her race.

Additionally, unlike the plaintiff in Sanchez, Mitchell does not assert that she amended the administrative charge to include claims of discrimination based upon age, non-union status, and color (independent of race); in fact, Mitchell impliedly concedes she did not amend the administrative charge by explaining, "I did not know the original documents [the Charge of Discrimination and Notice of Charge] could be changed" (ECF No. 27 at 2). Mitchell further explains that she believed she would have an opportunity to "explain" and "prove my case" later in the proceedings (*see id.*).

Mitchell's complaints to this court of discrimination based upon her age, non-union status, and color (independent of her black race) are not like or related to the allegations of race and gender discrimination contained in the EEOC charge, nor did Mitchell's complaints of age, color, and non-union status discrimination "grow out of" her race and sex based discrimination claims. Therefore, First Transit's motion to dismiss should be granted as to Mitchell's claims of discrimination based upon her age, non-union status, and color (independent of her black race).

B.    Failure to promote claim

First Transit also seeks dismissal of Mitchell's failure to promote claim (ECF No. 23 at 6–8). First Transit contends nowhere in the narrative portion of the Charge of Discrimination did Mitchell assert a failure to promote claim even though the claim developed in April of 2012, long before Mitchell's termination from employment on October 11, 2013 (*id.* at 6).[4]

The undersigned agrees. In <u>Mulhall</u>, *supra*, the Eleventh Circuit held that a claim of unequal pay is not the equivalent of a claim alleging failure to promote;

---

[4] First Transit further argues that even if Mitchell asserted a failure to promote claim in the Charge of Discrimination filed on February 10, 2014, the claim would have been untimely, because it was filed well beyond the 300-day filing deadline (*see* ECF No. 23 at 7 n.2).

Case No.: 3:15cv529/MCR/EMT

therefore, a claim of failure to promote was not within the scope of a charge alleging

only unequal pay.  19 F.3d at 589 n.8.

Here, Mitchell never mentioned in her Charge of Discrimination that she had

applied for the Assistant General Manager-Operations position in April of 2012, or

that she was not selected for the position, in approximately June of 2012.  Further, the

facts relating to Mitchell's termination claim (Dianne Hall's terminating her on

October 11, 2013, and replacing her with a white male; and Hall's terminating her

without first providing the progressive discipline that had been provided to others) do

not encompass facts that would also support a failure to promote claim based upon

Dianne Hall's being selected for the Assistant General Manager-Operations position,

instead of Mitchell.  The failure to promote in June of 2012 was a distinct adverse

action that could not reasonably be expected to grow out of an investigation into

Mitchell's termination in October of 2013.  Therefore, Mitchell's failure to promote

claim should be dismissed for failure to exhaust administrative remedies.  *See, e.g.*,

Jerome v. Marriott Residence Inn Barcelo Crestine/AIG, 211 F. App'x 844, 46–47

(11th Cir. 2006) (unpublished but recognized for persuasive authority) (employee

failed to inform EEOC of disparate-pay claim and thus was precluded from raising

claim in Title VII action against employer, although employee circled "wages" on

EEOC questionnaire; employee alleged only denial of promotion when he filed EEOC charge, and merely circling "wages" fell far short of putting EEOC on notice that employee was claiming that employer paid white employees less than black employees).

Moreover, even if Mitchell asserted a failure to promote claim in her EEOC charge, it was not timely. "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (per curiam); *see also* 42 U.S.C. § 2000e-5(e)(1). "A discrete . . . discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within [ ] 300 days of the date of the act or lose the ability to recover for it." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

Here, Mitchell's Charge of Discrimination was filed on February 10, 2014, more than 300 days after First Transit's choosing Dianne Hall over Mitchell for the Assistant General Manager-Operations position sometime between April and June of 2012. (*see* ECF No. 23, Exhibit A). Therefore, Mitchell's failure to promote claim should be dismissed for failure to exhaust administrative remedies.

Accordingly, it is **ORDERED**:

The clerk of court shall modify the docket to reflect that the sole Defendant in this case is First Transit, Inc. d/b/a Escambia County Area Transit

And it is respectfully **RECOMMENDED**:

1. That Defendant's motion to partially dismiss the Amended Complaint (ECF No. 23) be **GRANTED**;

2. That Plaintiff's claims of discrimination based upon color (independent or race), age, and non-union status be **DISMISSED without prejudice** for failure to exhaust administrative remedies; and

3. That Plaintiff's failure to promote claim be **DISMISSED without prejudice** for failure to exhaust administrative remedies.

At Pensacola, Florida this 24th day of April 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

# NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.